Billings, Thomas P., J.
For the following reasons, Plaintiffs Motion for Entry of Judgment and for Summary Judgment and for Summary Judgment on Issue of Fraudulent Conveyance of #3 & #5 Sedgwick Park, Woburn, MA (Paper #13) is ALLOWED IN PART and DENIED IN PART.

FACTS

The one-page Complaint was premature in that it sought to domesticate what was, at the time, an interlocutory order of the New York Supreme Court, finding for the plaintiff on liability only. This order had recently been affirmed on appeal, but still was not a final judgment; it since has become so (see below). Read indulgently, the Complaint also sought to set aside allegedly fraudulent conveyances of real estate at #3 and #5 Sedgwick Park, Woburn. [1]
The New York case arose out of an altercation on June 17, 2002 between the plaintiff Donna Hughes (“Hughes”) and defendant Paul Farrey (“Farrey”), who had married the previous month. Farrey stabbed Hughes, causing serious personal injury. He was arrested, pleaded guilty to assault in the first degree, and served 53 months of a five-year sentence. He is now back in Massachusetts on post-release supervision.
On July 15, 2002, while at Riker’s Island awaiting trial, Farrey executed two deeds to his mother, Ruth E. Farrey. Both recited consideration of “love and affection.” One transferred a 100% interest in #3 Sedgwick Park, Woburn; the other, a 50% remainder interest in #5 Sedgwick Park.
Eventually, Hughes and Farrey divorced. Hughes brought an action for personal injuries in the New York courts. She was awarded summary judgment on liability, which (as noted above) was affirmed on appeal. After a bench trial on damages, the court on January 9, 2008 entered judgment for Hughes in the amount of $6,189,103, exclusive of interest.
Further facts — or in some cases, the lack of them— are discussed below.[2]

DISCUSSION

A. Domestication of New York Judgment
Although the Complaint was premature when filed, it is undisputed that the New York Supreme Court has now entered judgment for Hughes in the amount of $6,189,103. That judgment is entitled to full faith and credit in this Court. Partial summary judgment will therefore enter in this case in favor of Hughes and against Paul E. Farrey in this amount.

*84
B. Fraudulent Conveyance

In this, as in any fraudulent conveyance action where the plaintiff seeks to collect a debt that arose before the transfer, she may pursue one of several
Under G.L.c. 109A, §5(a)(l), a transfer is fraudulent
if it was made “with actual intent to hinder, delay, or defraud any creditor of the debtor.”
Under c. 109A, §6(a), a transfer is fraudulent if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
The parties, in their briefs, devote themselves exclusively to the question, under section 5(a)(1), of Farrey’s intent in making the transfers when he did. A fact finder might, from the above-recited chronology alone, draw a reasonable inference that Farrey’s purpose in divesting himself of his real estate interests, was to hinder any attempt by Hughes to pursue an action against him for damages. The inference is not compelled, however, and the defendant’s affidavit — in which he points to a family history of early demise, a personal history of heart disease, and fear for his safely as a newly-minted inmate in pretrial detention center, and states that his intent was merely to get his affairs in order — raises a genuine issue of material fact for trial as to the intent theory.
The plaintiffs summary judgment papers do not mention the issue of Farrey’s insolvency except in a couple of oblique suggestions on the third and fourth (unnumbered) pages, without citations to the record, offered as evidence of his intent to hinder, delay or defraud creditors. Because the plaintiffs papers did not appear to pursue a claim under section 6(a), it is unsurprising that the defendants did not take on the issue in their submission, and it would be unfair to treat the issue as joined.
Even had the plaintiffs motion pursued a claim under section 6(a), moreover, the evidence in the record does not conclusively establish it. Farrey was deposed, and was asked about various aspects of his financial affairs. The questioning did not, however, establish what his assets were, as of July 2002 or at any other time. The questioning of Farrey’s mother Ruth (who held a power of attorney and managed Paul’s financial affairs while he was incarcerated) and of his sister Nancy (who helped Ruth with her duties as attorney-in-fact) was no more pointed, and no more informative on the question of what Farrey’s assets were as of July 2002. Inexplicably, none of the deponents was asked to list and value Farrey’s assets at the time of the transfers; nor does the record include other evidence (for example, and interrogatory answer) on this subject.
avenues. The two pursued most frequently depend, respectively, on the debtor’s intent or on his insolvency.
One might guess that Farrey, who was last employed as a Walgreen’s store manager at a salary of about $150,000, probably did not have sufficient assets in July 2002 (with or without the Woburn real estate) to pay Hughes’s claim, then unliquidated but subsequently established at over $6 million.[3] Both his mother and sister testified that they paid some of his debts with their own funds, conduct that is further suggestive of insolvency. Because the plain tiff will bear the burden of proving a fraudulent conveyance at trial, however, she has the burden here of producing uncon-troverted evidence establishing her claim.[4] Guesswork — even reasonable guesswork — cannot carry this burden.[5]
Summary judgment is therefore denied as to the fraudulent conveyance claim.

ORDER

Plaintiffs Motion for Entry of Judgment and for Summary Judgment and for Summary Judgment on Issue of Fraudulent Conveyance of #3 & #5 Sedgwick Park, Woburn, MA (Paper #13) is ALLOWED IN PART and DENIED IN PART. Partial summary judgment will enter for the plaintiff and against defendant Paul Farrey in the amount of $6,189,103. The fraudulent conveyance claim will be heard on the previously scheduled trial date of April 24, 2008.

 A claim relating to a third transfer of property at 6 Ingalls Street was voluntarily dismissed, evidently because it was by a different Paul Farrey. See Paper #9 and the undocketed Affidavit of Ann Farrey-Hart dated 8/4/06.

 I note here that my review of the record has been significantly hampered by plaintiff counsel’s nearly total failure to observe the requirements of Superior Court Rule 9A(b)(5). There is no statement of undisputed facts complying with the first paragraph of the Rule, nor a single citation to the record anywhere in the plaintiffs papers. Counsel’s naked assertions of fact in the brief, without record citations, do not constitute compliance with Rule 9A(b)(5) or with Mass.R.Civ.P. 56(e), and this noncompliance is not cured by stapling a wad of deposition transcripts and unattested documents to the brief. See both Rules, and Dziamba v. Warner & Stackpole, LLP, 56 Mass.App.Ct. 397, 399 (2002).
Noncompliance with the Rule may, under subsection 9A(b)(6), result in the motion not being acted upon. In the interests of justice, I have acted on this one.

 A debtor is insolvent “if the sum of the debtor’s debts is greater than all of the debtor’s assets, at a fair valuation.” G.L.c. 109A, §3(a). Hughes’s own claim, even though contingent and unliquidated, is counted at full value on the debit side of Farrey’s balance sheet. See, in addition to section 3(a), G.L.c. 109k, §2 (definitions of “claim” and “debt”); In re Worcester Quality Foods, Inc., 152 B.R. 394, 403 (Bkrtcy.D.Mass. 1993).

 This case is thus unlike Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991), which held that “a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial . . . need not *85 submit affirmative evidence to negate one or more elements of the other party’s claim,” but need only demonstrate that the opposing party “has no reasonable expectation of proving an essential element of that party’s case.”

 Even the first element of a claim under section 6(a) — lack of reasonably equivalent value given in exchange for the transfers — -is not as clear as might appear from the deeds’ recitation of “love and affection.” As noted above, Ruth and Nancy both testified they had to reach into their own pockets to pay Farrey’s debts. The record does not disclose how much, if any, of these payments were antecedent to the real estate transfers, or how they compared to the value of the real estate. See G.L.c. 109A, §4(a).